CUNNINGHAM (DRAKE v.). See Case No. 4,060.

----

## Case No. 3,481.

### CUNNINGHAM et al. v. HALL.

### [1 Cliff. 43.][1]

Circuit Court, D. Massachusetts. May Term, 1858.[2]

ADMIRALTY JURISDICTION—LIBEL BY SHIPOWNERS FOR BREACH OF CONTRACT.

1. District courts have no jurisdiction of a libel in personam against the builder, to recover damages for the non-completion of a ship, according to a written contract under which the ship was built and sold, for defects in

----

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
[2] [Reversing Cunningham v. Hall, Case No. 3,482.]

the construction, discovered after the ship was sold and employed on a voyage.

[Cited in Edwards v. Elliott, 21 Wall. (88 U. S.) 556; Doolittle v. Knobeloch, 39 Fed. 41. Explained in Endner v. Greco, 3 Fed. 412.]

2. The jurisdiction of the district courts is not limited to the particular subject over which it was exercised in the English courts of admiralty, when the federal constitution was adopted; neither does it extend, under the constitution and laws of congress, to all cases which would fall within its cognizance, according to the civil law and the practice and usages of continental Europe.

3. The intent and meaning of the provision of the federal constitution, that the judicial power shall extend to all cases of admiralty and maritime jurisdiction, must be determined in a great measure from the maritime law, as it was known and understood in the jurisprudence of the states when the constitution was adopted.

[Cited in New England Mut. Marine Ins. Co. v. Dunham, Case No. 10,155.]

4. Discussion of the extent of the admiralty jurisdiction in the United States.

[Cited in Diefenthal v. Hamburg-Amerikanische Packetfahrt Actien-Gesellschaft, 46 Fed. 399; The Manhattan, Id. 798.]

This was an appeal from a decree of the district court [of the United States for the district of Massachusetts] sitting in admiralty. A libel in personam was filed by [J. H. Cunningham and others] the purchasers and owners of the ship Flying Childers, to recover compensation for damages and expenses of repairs, alleged to have resulted from the non-completion of the ship, by the respondent [Samuel Hall] according to the terms of a written contract between the parties. When the agreement for purchase and sale was entered into, the ship was in the course of construction, and the respondent contracted to complete her in a particular manner, and when finished to deliver her to the libellants, for a specified sum. Upon the completion of the vessel she was delivered to and accepted by the libellants, who coppered, fitted, and sent her immediately to sea. It was alleged that, soon after sailing, the vessel proved to be leaky, and was subsequently found unseaworthy, in consequence of defects in her planks and calking. After a hearing exclusively upon the merits, the district court pronounced in favor of the libellants. [Case No. 3,482.] Between the time of the appeal and the argument thereon, the opinion of the supreme court in People's Ferry Co. v. Beers, 20 How. [61 U. S.] 402, was announced, and the attention of the circuit judge was only called to the question of jurisdiction.

F. C. Loring, for libellants.

The admiralty jurisdiction of the United States courts is not limited to that exercised by the same court in England. Waring v. Clark, 5 How. [46 U. S.] 454; The Genessee Chief, 12 How. [53 U. S.] 443; Ward v. Peck, 18 How. [59 U. S.] 267; The New York, 18

How. [59 U. S.] 223. The jurisdiction never depends upon the existence of a lien. If the cause of action be maritime in its nature, it may be enforced by a suit in personam, in all cases, and if the maritime or local law gives a lien, in rem. The General Smith, 4 Wheat. [17 U. S.] 438; Peyroux v. Howard, 7 Pet. [32 U. S.] 341; Andrews v. Wall, 3 How. [44 U. S.] 572; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 392. The contract of material-men, that is, of those who furnish materials or perform labor, in the building and repairing of ships, is in its nature maritime. In re Hull of a New Ship [Case No. 6,859]; Davis v. Child [Id. 3,628]; The Sandwich [Id. 13,409]; The Jerusalem [Id. 7,294]; The Nestor [Id. 10,126]; The Young Mechanic [Id. 18,180]; The Ellen Steward [Id. 11,594]. A material man may sue in rem, if he has a lien, and always in personam in the jurisdiction where the party is liable to be sued.

C. P. Curtis, Jr., for respondent.

No precedents to support the jurisdiction over a suit in personam, against the builder of a ship, to recover damages for a breach of warranty, can be found either in this country or in England. All the analogous cases show that such jurisdiction does not exist. Cutler v. Rae, 7 How. [48 U. S.] 729; The Orleans, 11 Pet. [36 U. S.] 175; Minturn v. Maynard, 17 How. [58 U. S.] 477; The John Jay, Id. 399; Vandewater v. Mills, 19 How. [60 U. S.] 83; Plummer v. Webb [Case No. 11,233]. It does not follow that admiralty has jurisdiction over the suit, because the business relates to a ship. Cox v. Murray [Case No. 3,304]; Gurney v. Crockett [Id. 5,874]; Bradley v. Bolles [Id. 1,773]; Andrews v. Essex Ins. Co. [Id. 374]; Clinton v. The Hannah [Id. 2,898]. A contract to build a ship is a contract made on land, to be performed on land. Beers v. The Jefferson, 20 How. [61 U. S.] 393.

The right to entertain jurisdiction for repairs in a home port depends upon the question whether a lien is given by the local law. Read v. Hull of a New Brig [Case No. 11,609]; Turnbull v. The Enterprise [Id. 14,242].

CLIFFORD, Circuit Justice. Whether the district court had jurisdiction of the cause as set forth in the libel is now the only point to be decided. Contested questions of long standing yet exist, touching the nature and extent of the admiralty jurisdiction of the district courts, and in respect to some of those questions there is still a great diversity of opinion, which may be seen even in the reported decisions of the supreme court. Some points, however, in this controversy have been authoritatively settled by that tribunal; and it is believed that a proper application of the principles already established by that court will be sufficient to determine the present question, without entering at large into a consideration of those which remain open to dispute. Assuming the facts to be as they are stated in the libel, it appears that the contract was made in Boston, where all the parties reside and where the service, whether maritime or otherwise, was performed. After the service was performed, an unconditional delivery was made of the vessel, and she was duly accepted by the libellants, who paid the consideration, and thereby became her unquestioned owners. More than seven months elapsed after the vessel was delivered before the libel was filed, and during all that time the libellants had the exclusive possession of the ship, which they still of right retain. Their claim, therefore, if it can be entertained at all in admiralty, can only be enforced by a proceeding in personam, such as they have instituted, for the plain reason that a proceeding in rem, on their part, would involve an absurdity, as they already have the absolute property in the ship, discharged of all claim on the part of the respondent. Having the absolute property in the ship, they could have no lien to be enforced, and nothing of the kind is pretended by the libellants. They contend that a contract to build a ship is a maritime contract, and that a breach of such a contract, by a failure to complete the ship, according to its terms, constitutes a cause of action within the admiralty and maritime jurisdiction of the district courts; and that in all cases, where the cause of action is maritime, it may be enforced by a suit in personam. That proposition, broad as it is, must be supported to its full extent, in order to uphold the jurisdiction in this case. And the argument proceeds upon the ground, that the mere existence of a lien only affects the remedy in admiralty, and can never give jurisdiction to an admiralty court independently of the character of the contract and the nature of the service performed; and as an original question, that may be the better opinion, although there are some decisions of the supreme court not quite reconcilable with that view of the law. Granting it to be so, then the admiralty can in no case enforce a lien, unless the cause of action be maritime, and one which might be prosecuted by a suit against the person. That question in one of its aspects is now before the supreme court, and a decision in the case may be expected during the next term. Regarding the question as an important one, and believing that it does not arise in this case, no opinion will be expressed on the subject. A single question is presented in the argument, and it is the only one which will be decided; and that is, whether the purchaser of a ship, constructed for him, under a written contract, after he has paid the consideration and accepted the ship, and fitted her as a sea-going vessel, may maintain in the district court a suit in personam for damages against the builder for the non-completion of the ship, according to the contract, on account

of defects in the construction, which were discovered subsequent to her delivery and employment on a foreign voyage. Ship-building is an occupation requiring experience and skill, and, as ordinarily conducted, is an employment on land as much as any other mechanical pursuit, and men engage in the business for a livelihood just as they do in other mechanical employments and for the same purpose. Shipwrights are seldom ship-owners, and not more frequently interested in commerce and navigation than other mechanics; unlike the seamen, their home is on land and not on the seas. Ships are bought and sold in the market, after they are constructed or partly constructed, and before they are fitted as sea-going vessels, just as ship-timber, engines, anchors, or chronometers are bought and sold; and no reason is perceived why a contract to build a ship, when there is no lien to be enforced, any more than a contract for the materials of which a ship is composed, or for the instruments or appurtenances to manage a ship, should be regarded as maritime. Such contracts are made on land and are usually performed on land, and when they are based upon the personal responsibility of the parties, as they are when there is no lien, their remedy is most conveniently and appropriately sought in the courts of the common law. No distinction in principle is perceived between a contract to build a ship, as in this case, and a contract for the materials, as the latter are included in the former, and both fall within the same principle under the rules of the civil law. These propositions lead necessarily to the conclusion, that contracts for ship-building, and contracts for repairs and supplies, in the home port, must stand upon the same footing, in respect to the question of jurisdiction, and be governed by the same principles. Whether the admiralty has or has not jurisdiction to enforce a lien created by the local law, it is not necessary now to decide, as no such question arises in the case. Every one who had repaired or fitted out a ship, whether at home or abroad, or lent money to be employed in those services, had by the civil law a privilege or right of payment, in preference to other creditors, upon the ship itself, without any instrument of hypothecation, or any express contract or agreement, subjecting the ship to such a claim; and that privilege still exists, in those countries which have adopted the civil law as the basis of their jurisprudence. That rule was never adopted in England, in respect to repairs and supplies in the home port, and is not included in the recent act of parliament, passed in the present reign. According to the law of that country, a shipwright, who had taken a ship into his own possession to repair it, was not bound to part with the possession until he was paid for the repairs, any more than any other artificer, unless there was a special agreement to give credit for a definite period; but a shipwright who had once parted with the possession of the ship, or had worked upon it without taking possession, or a tradesman, who had furnished materials or supplies for a ship, was not preferred to other creditors, and had no particular claim or lien upon the ship itself, for the recovery of his demand. Work, therefore, done for a ship in England, was supposed to be on the personal credit of the employer. Wilkins v. Carmichael, 1 Doug. 101; Abb. Shipp. (5th Am. Ed.) 187. But it is now settled by statute in that country, that the court of admiralty shall have jurisdiction to decide all claims and demands whatsoever, for necessaries supplied to any foreign ship or sea-going vessel, and to enforce the payment thereof, whether such ship or vessel may have been within the body of the country or upon the high seas at the time when such necessaries were furnished in respect of which such claim is made.

Admiralty courts in England, for a long time, held that repairs and supplies created a lien upon the ship, until the doctrine was finally overthrown by the common-law courts, in the reign of Charles the Second, and this statute was passed to restore the jurisdiction in respect to such claims, when the services were rendered for foreign vessels. More consistency has been preserved by the courts of this country. Here a lien is admitted, as arising from the necessity of the case, for such repairs and supplies as are reasonably fit and proper while the ship is abroad or in a port of a state to which she does not belong. When the ship is in a port of a state other than the one to which she belongs, the master, in the absence of the owners or employers of the ship, becomes their general agent by virtue of his appointment for providing necessary repairs and supplies for the preservation of the ship and the prosecution of the voyage; and such contracts are maritime and create a lien on the ship, which may be enforced in admiralty by a suit in rem. Thomas v. Osborn, 19 How. [60 U. S.] 22; The Aurora, 1 Wheat. [14 U. S.] 102. No such rule has ever prevailed in this country, in respect to repairs and supplies in the home port, except it be in favor of the ship-wright who has repaired the vessel and has not parted with the possession. In that case it is undeniable that he is entitled to retain the vessel until he is paid for his services. A somewhat broader doctrine was formerly maintained in some of the district courts, denying that any distinction existed between foreign and domestic ships, and holding that material-men had a lien on the ship for repairs done in domestic as well as in foreign ports, and might sue therefor in the admiralty.

This was held by Judge Winchester, in the case of The Sandwich [Case No. 13,409]; and a like opinion was intimated by Judge Peters, in Gardiner v. The New Jersey [Id. 5,233], though the learned judge admitted that his own practice had been to refer parties ex-

hibiting such claims to the state jurisdictions. Other district courts fully admitted the distinction, and it was applied by them in practice in determining the question of jurisdiction. Clinton v. The Hannah [Id. 2,898]; Shrewsbury v. The Two Friends [Id. 12,819]; Boreal v. The Golden Rose [Id. 1,658]; Prichard v. The Horatio [Id. 11,438]. Such was the state of the decisions in this country, when the case of The General Smith, 4 Wheat. [17 U. S.] 438, was carried to the supreme court; and it was there held, that where repairs have been made, or necessaries furnished, to a foreign ship or to a ship in a port of a state to which she does not belong, the general maritime law, following the civil law, gives the party a lien on the ship itself for his security; but that repairs and necessaries furnished in the port of a state to which the ship belongs were governed altogether by the municipal law of that state, and that no lien in such a case was implied by the maritime law; and accordingly the court denied the lien in that case, because the law of the state where the repairs were made did not give it for repairs on a domestic ship. Where the repairs are made or the supplies furnished for a vessel in a port of a state to which the vessel does not belong, she is considered a foreign vessel, and the rule of the general maritime law prevails; and for the plain reason that repairs and supplies in a foreign port are no less essential than the services of the mariner to furnish "wings and legs" to the ship, for the purpose of enabling her to complete the voyage for the benefit of all concerned. Necessity constitutes the foundation of the maritime lien for repairs and supplies, and that is made evident from the consideration, that if the owners are present, no lien is implied. On the other hand, where the vessel, through stress of weather or other accident, puts into a foreign port, and repairs or supplies are required, either for the safety of the ship or the prosecution of the voyage, the master, in the absence of the owners, has the right ex necessitate to procure them on the security of the vessel; and it is that necessity which confers the right to create the lien, and consequently where no such necessity exists, no such right can be exercised by the master; and it is because it does not exist in respect to repairs and supplies in the home port that no maritime lien is implied. And accordingly it was held by the supreme court, in People's Ferry Co. v. Beers, 20 How. [61 U. S.] 402, that where the owner is present, no lien is acquired by the material-man, nor is any lien acquired where the vessel is supplied or repaired in the home port; and it was said that the lien attaches to foreign ships and vessels only in favor of the carpenter, who repairs in a case of necessity and in the absence of the owner. Pratt v. Reed, 19 How. [60 U. S.] 359.

Such jurisdiction in cases of contract depends principally upon the nature of the engagement, and is limited to such as are purely maritime and have respect to rights and duties appertaining to commerce and navigation. 3 Story, Cont. 528. A contract to build a ship has much less reference to a voyage than a contract for repairs and supplies in the home port, and furnishes much less reason to imply a maritime lien. Judge Story admitted, in Andrews v. Essex Ins. Co. [supra], that such a contract could not be enforced in admiralty; and it was expressly held in Clinton v. The Hannah [supra], decided in 1781, that a shipwright could not sue in the admiralty for his contract wages for building a ship, and that case was cited and approved in the recent opinion of the supreme court,—People's Ferry Co. v. Beers [supra],—where it is emphatically declared, that "at no time since this has been an independent nation has any such practice been allowed." No case is cited in the argument, like the one under consideration, where jurisdiction has been entertained in the admiralty, and it is believed none can be from the decisions in this country which are recognized as authority at the present day. Such contracts are regarded as contracts made on land, and to be performed on land, as much as contracts for steam-engines, anchors, or chronometers; and as the circumstances attending these engagements usually afford the parties the amplest opportunity to know each other's pecuniary standing, they are supposed to be based upon personal responsibility, and consequently create no maritime lien upon the ship.

By the second section of the third article of the constitution, it is declared that the judicial power shall extend to all "cases of admiralty and maritime jurisdiction"; and it was doubtless the intention of congress, by the ninth section of the judiciary act, to confer the exclusive original cognizance of all causes of "admiralty and maritime jurisdiction" upon the district court; and the words of the act are to that effect, being "in terms exactly coextensive with the power conferred by the constitution." In order, therefore, to determine the limits of the admiralty jurisdiction, it becomes necessary to ascertain the true interpretation of the constitutional grant. On this subject two propositions may be assumed as settled by authority, and to those it will be sufficient to refer on the present occasion, without any particular discussion of the principles on which the decisions rest:—

First, it is well settled that the jurisdiction of the district courts is not limited to the particular subjects over which the English courts of admiralty exercised jurisdiction when the federal constitution was adopted.

Secondly, that the jurisdiction in admiralty, under the constitution and laws of congress, does not extend to all cases which would fall within it according to the civil law and the practice and usages of continental Europe.

Both these propositions are so firmly established, or so necessarily result from the decisions of the supreme court, that further discussion upon the subject appears to be unnecessary. 1 Kent, Comm. (9th Ed.) 402–419; Abb. Shipp. (5th Am. Ed.) 180–192. All the powers of the government of the United States, under the federal constitution, were derived from the people of the states who framed the constitution and put the government itself into operation. Maritime laws, and appropriate tribunals to administer them, existed in the states at the time the federal Union was formed. Those tribunals had their origin in colonial times, long before the confederation, and were continued until the constitution was adopted and the judicial system of the United States was organized. When the colonists immigrated here, they brought with them the laws of the parent country as their birthright, and, so far as they were applicable to their local condition, they were adopted and reduced to practice. After their organization as colonies, they assumed and exercised all the powers of government. New laws were made, and those in operation were modified. Judicatories were created and empowered to hear and determine causes, as well those of a maritime character as all other civil and criminal cases; and when, in the progress of time, they found it necessary and proper to frame the federal constitution, and saw fit to provide that the judicial power shall extend to all cases of admiralty and maritime jurisdiction, it was to the admiralty jurisdiction as it was well known and understood in the jurisprudence of the states that the framers of the constitution referred. That jurisprudence in all its branches was largely borrowed from the parent country, and was administered in tribunals fashioned after models drawn from the same source. These facts cannot be successfully controverted, as they are written on every page of the history of those times. That the admiralty jurisprudence of the states embraced some subjects not at the time admitted to be within it, according to some of the decisions of the king's bench, there can be no doubt, and hence is the correctness of the proposition, that the jurisdiction of the district courts is not limited to such subjects only as were allowed by those decisions to be of a maritime character.

Jurisdiction in admiralty under the constitution of the United States and laws of congress must be, therefore, determined by a just reference to the laws of the states and the usages of the courts prevailing in the states at the time when the constitution was adopted. No other rules are known, which it is reasonable to suppose could have been in the minds of the men who framed the constitution and organized the judicial system of the United States, than those which were then in force in the respective states, and which they were accustomed to see in daily and familiar practice in the state courts. Many of the laws and usages were the same as those then acknowledged in England, and to that extent the admiralty decisions in the state courts and those made in the courts of the parent country and of the commercial countries of continental Europe, when analogous, furnish a common guide. Waring v. Clark, 5 How. [46 U. S.] 454; Shrewsbury v. The Two Friends [supra]; People's Ferry Co. v. Beers, 20 How. [61 U. S.] 393; Grant v. Poillon, Id. 162.

Apply these principles to the present case, and there can be but one conclusion. Suits in personam for the non-completion of contracts for building a ship on land, and in a locality where all the parties reside, were never entertained in the admiralty before the constitution was adopted; and so far as appears, no such practice has been allowed since that time. Absence of all authority in adjudged cases after so long a period, and in a country so highly commercial as that of the United States, furnishes strong reason to conclude that the jurisdiction does not exist. Contracts for the building of ships, where a lien is given under the local law, have heretofore been regarded as maritime, and in repeated instances the lien so created has been enforced by a proceeding in rem, and the practice appears to be fully sanctioned by the twelfth admiralty rule.[3] The Calisto [Case No. 2,316]; Read v. Hull of a New Brig [supra]; Davis v. New Brig [Case No. 3,643]. Those cases are clearly distinguishable from the one under consideration, and cannot affect the question now to be decided. Here there is no lien to be enforced, and the suit is one against the person and for damages for the non-completion of the contract. Such suits, it is believed, are unknown in the admiralty practice of the country, and analogous cases support the proposition that the jurisdiction cannot be sustained. Admiralty jurisdiction is conferred by the constitution, and cannot be enlarged or diminished; and in this point of view, the decisions of the courts of this country upon jurisdictional questions, and the analogies to be drawn from them, are the safer guide, as, after all, such questions must be determined in a great measure by the maritime law of the United States, as it was known and understood in the courts of the states which formed the Union at the time the constitution was adopted. Other analogous cases may be referred to, tending to show that the jurisdiction in this case cannot be sustained. When a master was instructed, in his home port, to sell a cargo at the port of destination according to his judgment, and he landed the cargo there and proceeded to dispose of it on shore, it was held by Judge Betts, that this was not a maritime contract cognizable in an admiralty court; and again, where a master, so employed, abandoned a sale of the cargo in

---

[3] The twelfth admiralty rule then in force is now repealed.

order to effect a salvage service in a vessel procured by pledging the proceeds of the cargo, it was also held, that this was a breach of contract, for which no action would lie in a court of admiralty. Waterberry v. Myrick [Case No. 17,253]; The Harriet [Id. 6,097]. Judge Betts also held in Cox v. Murray [Id. 3,304], that a court of admiralty has no jurisdiction to afford a remedy, either in rem or in personam, for the breach of an executory contract for personal services to be rendered to a vessel in port, in lading or unlading her cargo. And the same learned judge remarked, that if such suits can be maintained, "the master or owner might resort to the same tribunal for the violation of agreements to build or repair a vessel to supply her with stores, or to provide her with a stipulated cargo." And he declared, that "the strong current of authority runs against the existence of any such powers in admiralty courts." Cox v. Murray [supra]; Gurney v. Crockett [Case No. 5,874]; Bradley v. Bolles [Id. 1,773]; Ransom v. Mayo [Id. 11,571]. Wherever jurisdiction of contracts between parties residing in the same state, for work and materials in the building of a ship, has been entertained, the proceeding has been in rem, and the supposed right of jurisdiction has been regarded as depending upon the question, "whether a lien is given by the local law of the state." Jurisdiction was placed expressly on that ground in Read v. Hull of a New Brig [Id. 11,609], where it was admitted that "the right to maintain jurisdiction depends upon the fact, whether there is a lien when the suit is commenced." Similar views are held also by Judge Conkling, in Merritt v. Sackett [Id. 9,484], where he says, that it is only in virtue of the lien given by a state law, that the admiralty jurisdiction is held to attach at all; and if the question had not actually been determined, it might be worth while to consider whether it would not be better to leave such liens to be enforced by the state tribunals alone. The suit in that case was in personam, and, there being no lien under the local law, it was held that the district court had no jurisdiction. And Justice Johnson, in Ramsay v. Allegre, 12 Wheat. [25 U. S.] 614, held the same doctrine, in an elaborate opinion, where the whole subject is very fully considered.

For these reasons, I am of the opinion that the district courts have no jurisdiction of a libel in personam against the builder, to recover damages for the non-completion of a ship, according to the written contract under which the ship was built and sold, for defects discovered in the construction after the ship was delivered and employed on a voyage. Remedies for the breach of such contracts, under such circumstances, appropriately belong to the courts of the common law.

The decree of the district court is therefore reversed, and the libel dismissed for want of jurisdiction.