### ENDNER v. GRECO.

(*District Court, S. D. New York.* June 14, 1880.)

1. JURISDICTION—DOMESTIC VESSEL—REPAIRS.—A suit *in personam* for repairs furnished to a domestic vessel is within the jurisdiction of the admiralty.

2. MARITIME CONTRACT—SCOW—REPAIRS.—A contract for the repair of a scow, used in carrying ballast to or from vessels, and propelled by steam-tugs, and having neither steam-power, nor sails, nor rudder, is maritime.

*F. A. Wilcox,* for libellant.

*B. E. Valentine,* for defendant.

CHOATE, D. J. This is a libel *in personam* to recover the cost of certain repairs upon four scows belonging to the defendant. It is objected that the court has no jurisdiction of the subject-matter of the suit. The points made against

the jurisdiction are that the contract for repairing the scows is not a maritime contract; that the scows are not ships or vessels; that they are adapted to use only in port, and not upon the high seas, and that if they are ships or vessels this court has no jurisdiction of a suit *in personam* for repairs furnished to a domestic vessel. In *The General Smith*, 4 Wheat. 438, it was held that a material man has no maritime lien on a domestic ship, but the court said: "No doubt is entertained by this court that the admiralty rightfully possesses a general jurisdiction in cases of material men, and if this had been a suit *in personam* there would not have been any hesitation in sustaining the jurisdiction of the district court." Id. 433. Although this *dictum* was strenuously objected to by one of the justices of the same court in *Ramsay* v. *Allegre*, 12 Wheat. 611, 614, it has been repeatedly reaffirmed by the supreme court, and it can no longer be questioned, that a contract for furnishing supplies or repairs to a domestic vessel is in its nature a maritime contract, and that a suit *in personam* thereon is within the jurisdiction of the admiralty. *The St. Lawrence*, 1 Blatch. 529, and cases cited; *The Lottawanna*, 21 Wall. 558.

In the case last cited the court says: "It seems to be settled in our jurisprudence that, so long as congress does not interpose to regulate the subject, the rights of material men, furnishing necessaries to a vessel in her home port, may be regulated in each state by state legislation. State laws, it is true, cannot exclude the contract for furnishing such necessaries from the domain of admiralty jurisdiction, for it is a maritime contract, and they cannot alter the limits of that jurisdiction," etc. Id. 579–80. "But the district courts of the United States, having jurisdiction of the contract as a maritime one, may enforce liens, given for its security, even when created by the state laws." Id. 580. The case of *Cunningham* v. *Hall*, 1 Cliff. 43, 47, is cited as sustaining the proposition that there is no distinction, as regards the jurisdiction between a contract for building a ship, which is held to be not maritime, and a contract for furnishing repairs to a ship

already built; and it is claimed that the reasoning of this case is also adopted by the supreme court in *Edwards* v. *Elliott*, 21 Wall. 532, 554.

If these cases contain some expressions warranting such an argument it is sufficient to refer to the language of Mr. Justice Clifford, who delivered the opinions in both of those cases, in the subsequent case of *The Lottawanna*, 21 Wall. 558, 591: "Undisputed matters need not be discussed; consequently, it may be assumed that a contract for necessary repairs or supplies is a maritime contract, whether the vessel was at home or abroad when the repairs and supplies were made and furnished." Id. 591–2. He dissented from the decision of the majority of the court on the ground that the case of *The General Smith* was erroneously decided, and that a contract for repairs or supplies to a vessel in her home port was not only a maritime contract, but one to which the general maritime law attached a maritime lien. See, also, *Brookman* v. *Hamill*, 43 N. Y. 554; *Vose* v. *Cockcroft*, 44 N. Y. 415; *Poole* v. *Kermit*, 59 N. Y. 554. Nor is there any valid objection to the jurisdiction in this case growing out of the character of the scows, or the uses to which they were adapted and applied. They were adapted only for use in port, and were in fact used in carrying ballast to and from vessels. When taken from vessels by them the ballast was carried to some point on the bay and dumped on the shore. They had neither steam-power nor sails nor rudders, and were moved about by steam-tugs. In these respects they were not unlike canal-boats and barges, although these have rudders. Canal-boats are now treated as vessels. While these scows are employed in carrying ballast to or from a vessel, that ballast may be considered as their cargo. They are, as it seems to me, properly to be considered vessels,—instruments of commerce and navigation,—a contract for the repair of which is maritime, because it has relation to trade and commerce, and "some connection with a vessel employed in trade." See *The Kate Tremaine*, 5 Ben. 60; *The Onore*, 6 Ben. 564; *The River Queen*, (unreported;) *The Bob Connell*, 1 FED. REP. 218; *Dunham* v. *Ins. Co.* 11 Wall 1.

The principal question of fact contested upon the trial was whether the sum of $633, for which a receipt was given by the libellant to the defendant, had, in fact, been paid. The whole bill of repairs was $1,412.69. Libellant admits payments on account amounting to $520. The libellant claims that this receipted bill for $633, for repairs to one of the scows, was made out and delivered, without any money being paid, at the defendant's request, to aid him in making out a claim for damages against a steamboat. The question depends mainly on the relative credibility of the libellant and his son, on the one hand, and of the defendant, on the other; and, without going at large into the evidence, it is sufficient to say that, upon the whole proofs, I entertain no doubt whatever that no money was paid upon the giving of this receipt. The defence set up in the answer, of a special agreement to do the whole work for $200, is not supported by any proof whatever. The question raised by the answer, as to the proper amount of libellant's bill, must be determined upon a reference. Whether the libellant's answers to the interrogatories proposed by the defendant are to be deemed evidence in favor of the libellants, it is unnecessary now to determine.

Decree for libellant for such balance, if any, as shall be found due upon a reference. The question of costs reserved till the coming in of the report of the commissioner.