## HAY & CLARK *vs.* STEAMBOAT WINNEBAGO.

APPEAL FROM CIRCUIT COURT, WINNEBAGO COUNTY.

Heard September 27, 1859.]                    [Decided January 4, 1860.

### *Boats and Vessels—Lien.*

The right of a party having a claim against a boat or vessel, for which he may sue the vessel itself, under the boat and vessel act, is not cut off, if before he sues, but within the time in which by the act he was entitled to sue, the boat is sold on an execution issued on a personal judgment against the owner.

The sale of a boat or vessel by the owner, on an execution against the owner, does not divest such boat or vessel of the capacity to owe or be bound for a debt, and to be sued for the payment of the same.

This was an action commenced by Samuel M. Hay and Orson J. Clark, against the Steamboat Winnebago, under the act relating to boats and vessels. The complaint alleged, in substance, that they had a claim against the boat, for the sum of $124, for work, materials furnished in building, repairing, &c., the steamboat. The boat was seized by the sheriff, upon the warrant. The answer to the complaint was put in by A. G. Lull, who claimed as owner, and in substance set forth, that on the 15th day of September, A. D. 1857, a judgment was rendered in the circuit court of Winnebago county, in favor of Joseph H. Turner, against Charles A. Garrett and others, and that on the 29th day of September, of the same year, execution was issued thereon, in the usual form, and and placed in the hands of the sheriff of Winnebago county, who levied upon the steamboat Winnebago, the same at the time being the property of the judgment debtors; and the sheriff afterwards, under the execution, sold the same to Albert G. Lull, who received a bill of sale thereof from the sheriff, and at the time of the commencement of this action, plaintiffs had no right to the boat, and no lien thereon, as against the title of defendant.

The issue thus made was tried by the court, who found, that " by the stipulation of the attorneys of the above parties, all the material allegations of the complaint and answer are admitted, and it appearing to the court by stipulation that the

complaint of the plaintiffs is true, and that said steamboat Winnebago was seized by the plaintiffs, on the 15th day of May, 1858, and that previous to that day, to wit, on the 6th day of November, A. D. 1857, the said boat was sold to the defendant, Albert G. Lull, on an execution against the owner of said boat. It is therefore adjudged by the court that the defendant have judgment, with costs.

Judgment was entered on this finding, from which the plaintiff appealed.

*Bouck & Edmonds,* for the appellant.

*Lane & Boynton,* for the respondent.

*By the Court,* PAINE, J. The single question presented on this appeal is, where a party has a claim against a boat, for which he may sue the boat itself, under the boat and vessel act, whether his right is cut off, if before he sues, but within the year in which, by that act, he was entitled to sue, the boat is sold on an execution issued on a personal judgment against the owner.

The question is supposed by the respondent's counsel to turn upon the point, whether, by the act, the party had a lien on the boat; and in support of the position that he had not, he relies on the case of *Jones et al. vs. Steamboat Commerce,* 14 Ohio, 408. In that case, under a statute substantially similar to ours, in those provisions which are material to this question, the court held that no lien existed by the act, until the boat was actually seized, and consequently that a prior judicial sale, under the same act, would divest all rights of other parties to pursue the boat under it. The court, in coming to this conclusion, do so, apparently, with considerable doubt, and state that great diversity of opinion had existed among the bar of that state upon the point; and after a careful examination, we have arrived at the opposite result.

In the first place, their act, like ours, contains no provision by which other persons, having similar claims against the

boat, can be made parties, or derive any benefit from a suit by one. If it did, it would then be analagous to a suit in admiralty, where all the world are parties, and where a sale carries to the purchaser a perfect title, divested of all previous claims or liens. Under such a statute, as all having claims might present them before sale, it might well be said that the intent was that a sale should give a complete title. But under a statute giving expressly to all who have claims, a right to pursue the boat, and making no provision whatever that on a suit by one, any others could derive any benefit from it, it seems to us the very opposite intention is manifest. The distinction between such statutes and proceedings in admiralty, or statutes under which all interested may be made parties, seems most material in determining this question, and has frequently been pointed out by the authorities. *Germain vs. Steamtug Indiana*, 11 Ill., 555; *Ritter vs. Steamboat Jamestown*, 23 Mo., 348; *Steamboat Sea-Bird vs. Beehler*, 12 id., 569.

We think these cases satisfactorily establish that it does not depend entirely on the question of lien or no lien, whether previous rights are cut off, but that even previous liens may be divested by a sale in admiralty, or under a statute authorizing all interested to become parties. But does our statute give a lien? It contains no words giving it expressly, but like the Ohio statute, it authorizes the boat itself to be sued, and to be sold to pay the judgment against itself. The court in Ohio relies on the absence of any express declaration of a lien, and compares the language of this act with that of others, saying that " goods and chattels shall be liable for debts," &c. And because, under such other statutes, there is no lien on the goods until seized, the court infers that the same construction should prevail under this act, and that there is no lien until seizure. But we think this argument overlooks a most important distinction between the two statutes. Stat-

utes subjecting the goods of debtors to liability for their debts, do not invest them with a capacity to be sued. If they are transferred, either by the debtor himself, or by a judicial sale, before being seized, they are no longer his goods, and do not come within the statute. But the boat or vessel is clothed with a capacity to owe and to be sued. If transferred, it is still the same boat or vessel, and there is nothing in the transfer repugnant to the continued existence of its capacity as a debtor. And we think the case in Ohio itself concedes enough to destroy the ground on which the decision was based. It admits that if the owner of the boat sells it, such sale does not cut off previous claims under the statute. Is not this entirely inconsistent with the position that it stands on the same footing with other property, and that there is no lien? We think so. If the owner of ordinary property, on which there is no lien, sells it, the purchaser, even though he knew that other persons had claims against the owner, in the absence of fraud, takes a perfect title. The court makes a distinction between a sale by the owner, and a judicial sale, admitting that the former would not divest the right, but claiming that the latter would. We think such a distinction cannot be sustained. In the absence of any question as to a fraudulent transfer, an execution creditor can seize and sell no greater interest than the debtor himself could voluntarily transfer. The court concedes that the debtor cannot transfer the boat so as to divest it of its capacity to be sued for any claim under the act. And the same position has been sustained by that court in subsequent cases. *Provost et al. vs. Wilcox et al.*, 17 Ohio, 359 ; *Steamboat Monarch vs. Potter & Co.*, 7 Ohio St. Rep., 457. This, in substance, establishes the lien, as against any sale by the owner. And that point being arrived at, we can see no foundation for any distinction in favor of purchasers at a judicial sale, on execution upon a personal judgment against the owner. On the contrary, we

have always understood that the maxim, *caveat emptor*, applies peculiarly to such sales of personal property, and that they cannot convey any interest which the debtor himself could not.

Upon the whole, therefore, we are of the opinion, that while our statute does not expressly declare that the claims which it provides for shall be liens, it substantially makes them so, by investing the boat with the capacity to owe and be sued. And they are not cut off by any sale, which would not have the effect to cut off admitted liens. The legislature must have had in view the general maritime lien. And although they did not follow its analogy so far as to provide that all interested could be made parties to a suit, yet they do place these claims upon the same basis on which those liens rest, and provide for giving effect to them in a similar manner, by a proceeding against the vessel. The nature of the maritime lien is thus stated in *Dudley vs. Steamboat Superior*, 3 Am. Law Reg., 630: "The former have their origin in the fact or the presumption of the fact, that credit is given, not to the owner or master, but to the vessel; and by the admitted doctrine of the maritime law, it attaches from the time the credit is given, and is equivalent to an express hypothecation of the vessel. It adheres to the *res*, as a subsisting and efficient lien, wherever it goes, and into whosesoever hands it may pass." These liens were enforced by a proceeding against the vessel; and when our legislature provided that certain debts might be contracted on the credit of the vessel, that the vessel might itself be sued as the debtor, and sold to pay the debt, it seems to us to provide for all that is necessary to a lien, and to have made it superfluous to declare that a lien should exist. This view seems supported by the fact, that the right to bring the action is limited to one year after the claim accrues, which has since been diminished to three months, with respect to boats used entirely on the inland waters of the state. Unless

the intent was to give a right not liable to be cut off, if any creditor of the owner should happen to seize the boat first, under its general character as property, why confine the right to one year, or three months? We cannot account for this, except on an intent to establish a privileged claim.

We think, therefore, the boat was liable to this suit, at any time within the year after the claim accrued. And following the intimation of the court of Ohio, in the case cited from the 17th, we may say that a sale under execution against the owner, no more repeals this statute, than a sale by the owner himself.

And this is no hardship upon the purchaser. The law is a public law. He is bound to know it. The thing which he buys is invested by law with a capacity to owe and be sued, and he buys it knowing its capacity.

The claims intended to be protected by this act are of a meritorious character, and we think it should receive a liberal construction, so far as may be necessary to afford that protection which was evidently designed.

The judgment is reversed, with costs, and a new trial awarded.