## FERRAN & LOWNDES *vs.* HOSFORD & GOODRICH.

When the proceeding is against a vessel by name, whatever may be the nature of the claim, it is a proceeding in the nature and with all the incidents of a suit in admiralty, and all such proceedings are exclusively within the jurisdiction of the district courts of the United States.

Hence a statute passed by a state legislature, conferring the right to a lien on a vessel, and to proceed against her by name, whatever may be the nature of the claim, is unconstitutional and void.

To determine whether the debt is within the sphere of maritime jurisdiction, it is not necessary to ascertain for what purpose, or for whose use, it was contracted. If the proceeding is *in rem,* and against the vessel by name, this is exclusive, and *per se* shows that it is one of maritime jurisdiction, and exclusively within the jurisdiction of the district courts of the United States.

THE defendants appealed, separately, from a judgment ordered at a special term, on a trial before the court, without a jury.

The plaintiffs furnished supplies to the steamship Kalorama, at New York, in February, 1867, and claimed a lien therefor under the act of the legislature providing for collection of demands against ships and vessels, passed April 24th, 1862. (*Laws of* 1862, *ch.* 482.) The vessel was attached, and the defendants gave the ordinary bond providing for the payment of the amount if established to be a lien. The action was brought upon this bond. The following facts were found by the justice before whom the action was tried:

*First.* That the plaintiffs were copartners, as alleged in the complaint, under the firm name of Ferran & Lowndes. *Second.* That from the 15th day of February, 1867, to the 30th day of April, 1867, one William S. Johnson was master and captain of the steamship Kalorama, then being in the port of New York; and that, during the time aforesaid, said Captain Johnson, then having charge and command of said vessel, purchased for the use of said vessel, from the plaintiffs, at their stand or place of business in Washington market, in said city of New York, goods, wares and merchandise, for said steamer, amounting in the aggregate to the sum of nine hundred and seventy-six dollars and forty-one cents, ($976.41,) and that the same were necessary and proper for the use of said vessel, and said master was duly authorized to make such purchase for the use of said vessel. That said vessel was laid up at the dock in said city of New York during all the time aforesaid, and was not engaged in navigation during any portion of the time aforesaid; and that said Johnson, in behalf of the owners, promised to pay the plaintiffs the sum of nine hundred and seventy-six dollars and forty-one cents ($976.41) for the same. *Third.* That no part of the plaintiffs' demand has been paid, but the sum of nine hundred and seventy-six dollars and forty-one cents, ($976.41,) with interest thereon from the 1st day of May, 1867, is justly due and owing to said plaintiffs, as alleged in the plaintiffs' complaint. *Fourth.* That on the 30th day of April, 1867, the plaintiffs, pursuant to the statute in such case made and provided, duly filed with the clerk of the city and county of New York, a specification of their demand and lien upon said vessel, and thereby perfected a valid lien upon or against said steamer Kalorama, for the amount of the said demand. *Fifth.* That on the first day of May, 1867, the plaintiffs having such lien as aforesaid, applied for and obtained a warrant to enforce said lien, commanding the sheriff of the city and county of New

York to attach said vessel, to answer the plaintiffs' said claim, if established to be a lien upon said vessel, and that the sheriff, under and in pursuance of said warrant, duly attached and seized said vessel. *Sixth.* That afterwards, and on the 8th day of May, 1867, the defendants applied for and obtained an order of this court directing the discharge of said vessel, upon the execution of the usual bond in such case provided, and that thereupon, and in pursuance of said order, and for the purpose alleged in the complaint, the defendants duly executed and delivered the bond mentioned and set forth in the plaintiffs' complaint, and thereby did obtain a discharge of said vessel. *Seventh.* The judge found that by a stipulation signed by the plaintiffs' attorney, it was admitted that the steamer Kalorama was a vessel, and was registered in Baltimore, Maryland, and Georgetown, District of Columbia, and that her owner resided in Washington, District of Columbia, at the time the supplies named in the complaint were furnished, and that he was totally insolvent. *Eighth.* The judge found, as a matter of law, that the plaintiffs' aforesaid claim was a subsisting lien upon said vessel at the time said bond was executed and delivered as aforesaid, and for the costs of the proceedings thereupon had up to that time. *Ninth.* That the defendants were jointly liable to the plaintiffs upon their aforesaid bond, according to the terms and conditions thereof, to the extent of the plaintiffs' aforesaid lien, to wit, in the sum of nine hundred and seventy-six dollars and forty-one cents, ($976.41,) and interest thereon from the first day of May, 1867, besides costs and disbursements to be taxed, including costs on said warrant of attachment, and proceedings thereupon had.

For which amount the judge ordered and directed judgment for the plaintiffs.

Ferran *v.* Hosford.

*Wm. W. Goodrich,* and *Davis & Edsall,* for the appellants.
I. This statute has been adjudged unconstitutional, so far
as it attempts to give a lien on a foreign vessel. (*The
Moses Taylor,* 4 *Wall.* 411. *Trevor* v. *Hine, Id.* 555. *In
Re Steamboat Josephine,* 39 *N. Y. Rep.* 19.)

II. The Kalorama being owned and registered in an-
other state, was a foreign vessel, so as to give a lien in
admiralty. (1 *Parsons' Maritime Law,* 492, *and notes.
Prat* v. *Read,* 19 *Howard's U. S.* 359. *The Nestor,* 1 *Sumner,*
73. *The Stephen Allen, Blatch. & H.* 175.)

III. To enforce the law for supplies furnished to such a
foreign vessel, the admiralty courts have exclusive juris-
diction. (*Cases last cited; also* 12 *Admiralty Rule, U. S.
Supreme Court, in* 21 *Howard's Reports.*) (1.) The constitu-
tion of the United States (sec. 2, art. 3) extends the judi-
cial power of the United States to all causes of admiralty
and maritime jurisdiction. (2.) Section 9 of the judiciary
act of 1789, gives to the district court of the United
States, "exclusively of the state courts," cognizance of all
civil causes of admiralty and maritime jurisdiction, "sav-
ing to suitors a common law remedy when the common
law is competent to give it." The act of 1862 is, there-
fore, unconstitutional and void, so far as relates to the
present action. This point is expressly decided in the cases
cited under the first point.

IV. It makes no difference that the vessel was not en-
gaged in navigation during the time of the supplies. The
only question is, whether she was a foreign vessel, and
whether if owned by a non-resident the admiralty had
jurisdiction. If she was a foreign vessel, especially if the
owner was non-resident and insolvent, then there was ju-
risdiction in the admiralty courts to enforce the lien, and
the act becomes unconstitutional to that extent. This
jurisdiction has never been questioned or doubted.

The law on this subject has been well stated by United
States judges, Nelson, Shipman and Benedict, in the re-

cent cases of the Neversink, the James Guy and the Washington Irving.

V. The plaintiffs have failed to establish that their claim is a lien upon the vessel, pursuant to the conditions of the bond. The burden of proof on this point was with them. To prove this, they were bound to show (what they could not have shown) that the United States courts have no jurisdiction to enforce the claim in admiralty, because, even if the statute had not been declared unconstitutional, unless they show that fact, there is no consideration for the bond, and it is *void*.

It follows, from the foregoing points, that there is no statutory authority for the bond, and that it is without consideration or color of law and void, and the judgment should be reversed.

*E. A. Doolittle*, for the respondent. I. The condition of the bond is to pay "any and all claims and demands which shall be established to be due the plaintiffs, and to have been subsisting liens upon the vessel pursuant to the act of 1862." That act first creates a lien. The language of the act is, "such debt shall be a lien upon such vessel, &c., and shall be preferred to all other liens thereon except mariners' wages." The authority of the legislature of New York to create liens upon property within its jurisdiction, for indebtedness growing out of contracts made and executed within its jurisdiction, cannot seriously be questioned; such right has been exercised and acknowledged from time immemorial. For instance: landlord's lien; the mechanic's lien; the lien created by filing *lis pendens*, &c. &c.

The United States courts have repeatedly recognized such rights, and have enforced them in admiralty. *Parsons* says: "It is obvious that our state legislature have no power to confer additional jurisdiction upon the United States courts. But the legislature may *give a lien* where

none before existed. And if this is in respect to a subject *maritime in its nature,* admiralty process should lie to enforce it. (2 *Pars. Mar. Law,* 640, 641.) The grant to the United States in the constitution, of all admiralty and marine jurisdiction, does not extend to a cession of the waters in which these cases may arise, *or* of general jurisdiction over the same. The general jurisdiction over the place, subject to this grant, adheres to the territory as a part of the sovereignty not yet given away. The residuary powers of legislation still remain in the states. (*United States* v. *Bevain,* 3 *Wheat.* 336.)

The creation of liens, by means of attachment, is governed by the local and state laws, and when courts are called upon to construe state laws giving such liens, they should follow the decisions of the courts of the state. (*The U. S. Perry Manuf. Co.* v. *Brown,* 2 *Wood. & M.* 449. 10 *Law R.* 264.) Such lien has been enforced in numerous cases. (*See note* 3, *Id.* 640; 1 *Pars. M. L.* 449, *note* 1.) In the case of the ship *Harriet Olcott,* (*Id.* 229,) and the ship *Harvest,* (*Id.* 271,) *services* which were not maritime in their nature were enforced in admiralty, as they were made a lien on the vessel by the state law. (*See note,* 1 *Parsons' M. L.* 499.) In the case of the *People's Ferry Company* v. *Beers,* (20 *How.* 393,) the court says, district courts have recognized the existence of admiralty jurisdiction *in rem,* against vessels, to enforce claims, *where a lien had been created by the local law of the state.* Again, the 12th admiralty rules of the Supreme Court, till altered or repealed in 1859, provided "that there should be a proceeding *in rem* in cases of domestic ships, *where, by the local law, a lien is given to* material-men for supplies," &c. (*See note* 2 *to page* 501 *of* 1 *Parsons' Maritime Law.*) Both defendants admit the plaintiff had a lien on the vessel. Wherever the *local law gives a lien* on a vessel, admiralty has jurisdiction *in rem* to enforce it. (*Cornish* v. *The Murphy,* 2 *Bro. Cor. Adm'ty Law,* 550, *App. Sloop*

*Mary,* 1 *Paine's Circuit Rep.* 671.   *The brig Draco,* 2 *Sumner,* 157.) All these cases are cited to show that the right of the state laws to create liens have been recognized in the fullest possible manner.   And admiralty often enforced those liens *in rem* till the rule was changed, taking away the right, in 1859.   So far, then, as this action is concerned, it is immaterial whether admiralty has or has not jurisdiction to enforce such lien *in rem.*   If the lien existed, the condition of the bond is to pay such lien.   That such lien did exist cannot be denied; the act of 1862 declares it in express terms, and the authorities above cited show it is a valid lien.   The defendants admit that all the papers to perfect the plaintiffs' lien, and for the attachment under the act of 1862 and the attachment issued thereon, were regular and sufficient, according to the requirements of the act, the defendant Goodrich reserving his objection to the constitutionality of the act.   The court found as a question of fact that the plaintiffs had perfected a valid lien, and, as matter of law, that the plaintiffs' claim was a subsisting lien upon the vessel.

II. In this case the Supreme Court had jurisdiction, because this was not a maritime contract.   Maritime causes "are causes of action originating on the high seas, or growing out of maritime contracts." (*Burrill's Law Dic.*)   Maritime contracts are contracts which relate to the navigation of the seas. (2 *Bouv. Law Dict.* 102.   *Dunlap's Adm. Pr.* 41, 42, 43.)   Because it relates to a ship, does not necessarily make it a maritime contract.   It has been held repeatedly that a contract to build a ship is not a maritime contract.   The language of the court is, "So far from the contract being purely maritime, and touching rights and duties appertaining to navigation," or elsewhere, "it is a contract made on land to be performed on land." (*Minturn* v. *Maynard,* 17 *How.* 477.   *Maguire* v. *Card,* 21 *id.* 248.   *People's Ferry Co.* v. *Beers,* 20 *id.* 393.   *Cunningham* v. *Holt, U. S. District Court, N. Y.   Bradley*

v. *Bolles, Abb. Adm.* 569.) The contract was to build a sea-worthy vessel. On appeal, Mr. Justice Clifford dismissed the case for want of jurisdiction, on the ground that the contract was not of a maritime nature. To constitute a maritime contract, cognizable in admiralty, "it is indispensable that it should relate to commerce carried on by water, and even to render a tortious act thus cognizable, it must be shown to have been committed, or, at least, begun on water. (*The Orleans* v. *Phœbus,* 11 *Peters,* 175. *Conklin's Treat. 4th ed.* 254. *Brown* v. *The Hornet, Crabbe,* 426.) This contract did not in anywise relate to commerce carried on by water. It is for goods sold in Washington market, in the usual course of business. The vessel was laid up, and not engaged in commerce at all. This was proved and the court so found. It is not contended that admiralty had jurisdiction in such cases till its jurisdiction was extended by the act of congress, passed February 26, 1845." (*See 5 U. S. Statute at Large, p.* 526, *chap.* 20.) The admiralty courts have no common law jurisdiction. Their jurisdition depends entirely upon the statute. That statute extends their jurisdiction so as to embrace maritime contracts, even in cases where they were to be performed wholly within the body of a county, "*provided the vessel is enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation between ports and places in different states and territories,*" &c. (1 *Brightley's Digest,* 25, *sec.* 3.) This vessel was not, at the time, "*licensed for the coasting trade; her license had expired; she was not at the time engaged in business of either commerce or navigation between port and places in different states and territories.*" Nor was she in any manner engaged in *commerce* or *navigation.* She was laid up at the dock in this city, and therefore does not come within the acts. (1 *Brightley,* 25, *sec.* 3.) We therefore submit that this court has jurisdiction to enforce its lien by attachment. The plaintiffs' claim is admitted to

Ferran v. Hosford.

be a just one. It is also admitted that he has taken all the necessary steps to perpetuate his lien; that the attachment is regular, provided the court has jurisdiction; also, that admiralty cannot give us an action *in rem*, because by a rule of court they have taken away this remedy. (*Maguire* v. *Card*, 21 *How.* 246.) Under such circumstances, this court should respect and follow the law of the state, and administer justice between the parties. Justice Nelson says, (21 *How.* 251,) "We have determined to leave all those liens depending on state laws, and not arising out of maritime contracts, to be enforced by the state laws." So in respect to the internal commerce of the states, which is the subject of regulation by their municipal laws, contracts growing out of it should be left to be dealt with by its own tribunals. (*Maguire* v. *Card*, 21 *How.* 251.) We claim this on two grounds: 1. The plaintiffs had a valid subsisting lien on the vessel by statute, and the condition of the bond is to pay all subsisting liens. And the defendants must do that, whether the attachment was the proper remedy to enforce the lien or not. 2. The transaction is not a maritime contract or transaction, and therefore admiralty has no jurisdiction of it.

*By the Court,* CLERKE, P. J. This case comes within the principles relating to admiralty jurisdiction, embraced in the recent decision of the Court of Appeals, *In Re Steamboat Josephine*, (39 *N. Y. Rep.* 19.) It is there decided that when the proceeding is against a vessel by name, whatever may be the nature of the claim, it is a proceeding in the nature and with all the incidents of a suit in admiralty, and that all such proceedings are, exclusively, within the jurisdiction of the district courts of the United States. Consequently a statute passed by a state legislature, conferring the right to a lien on a vessel, and to proceed against her by name, whatever may be the

nature of the claim, is unconstitutional and void. To determine whether the debt is within the sphere of maritime jurisdiction, it is not necessary to ascertain for what purpose, or for whose use, it was contracted. If the proceeding is *in rem*, and against the vessel by name, this is conclusive, and *per se* shows that it is one of maritime jurisdiction, and exclusively within the jurisdiction of the district courts of the United States. I resisted this decision, in the Court of Appeals, for many reasons, constitutional and founded on decisions in courts of admiralty; but of course, as we consider this case is within that decision, it must, now, be controlled by it.

The judgment should be reversed, with costs.

[NEW YORK GENERAL TERM, June 7, 1869. *Clerke, Cardozo* and *Geo. G. Barnard,* Justices.]