THORSEN and another vs. THE SCHOONER "J. B. MARTIN" and others.

*Admiralty jurisdiction of Federal and State courts—Contract to supply sails, etc., to vessel in building.—Lien on vessel under our statute.—When lien attaches.—Not affected by change of owners.*

1. A contract to construct the hull of a vessel, to furnish the boilers and machinery of a steamer (although to be put in after she is afloat), or, as in this case, to supply sails, cordage, etc., for a sail vessel, in building, is not a *maritime* contract, so as to fall within the *admiralty* jurisdiction of the federal courts.
2. In admiralty causes arising upon the lakes, the state courts have a concurrent jurisdiction over remedies given by the state laws; and there is nothing in the decision in *The Eagle* (8 Wall. 15), inconsistent with this view.
3. The decision in *Hay vs. Steamboat Winnebago* (10 Wis. 428), as to the effect of our statute in creating a lien upon the vessel in such cases, notwithstanding subsequent changes of ownership, adhered to.
4. Where the vessel is built and equipped out of this state, the lien given by our statute attaches as soon as she enters the state (before actual seizure). So *held* in a case where a city of this state was the vessel's home port, and both the owner and the parties furnishing the supplies were residents of that city and citizens of Wisconsin.
5. The act of Congress concerning the registering of bills of sale, mortgages, etc., of vessels, affects only rights acquired under written instruments, and not the lien for supplies acquired under our statute.

APPEAL from the Circuit Court for *Milwaukee* County.

Chapter 150 of the Revised Statutes provides (section 1) that "every boat or vessel used in navigating the waters of this state shall be liable:—1. For all debts contracted by the master, owner, agent, or consignee thereof, on account of supplies furnished for the use of such boat or vessel; on account of work done or service rendered on board of such boat or vessel; or on account of labor done or materials furnished by mechanics, tradesmen, or others, in and for building, repairing, fitting out, furnishing or equipping such boat or vessel." The second section provides, that " any person having a demand as aforesaid, instead of proceeding for the recovery thereof against the master, owner, agent or consignee of a boat or vessel, may, at his option, institute action against such boat or vessel by name." The chapter further prescribes the mode of commencing and conducting a suit against the vessel (either in the circuit court of the county, where the same "may lie or be," or in a justice's court), for a sale of the vessel, on order of the court, to satisfy a judgment rendered against it, etc. Chapter 99, Laws of 1858, provides, that in all actions arising under said ch. 150, " against boats and vessels navigating the inland waters of this state exclusively, [they] shall be summoned within three months after the cause of action shall have accrued, and not after that period." These acts were repealed ( the former expressly, and the latter virtually) by ch. 151, Laws of 1859, but were re-enacted, and said ch. 151 repealed, by ch. 456, Laws of 1864.

On the 23d of December, 1868, *Norris* and *Thorsen* filed in the circuit court a complaint against *The Schooner " J. B. Martin,"* under the statute. It alleges that in or about the month of February, 1868, said schooner, having been built and launched at the city of Detroit, in the state of Michigan, and standing in

need of an equipment—such as sails, cordage, ropes and other articles necessary to make her seaworthy and ready for service upon the lakes, where she was intended to be employed, the plaintiffs (co-partners as ship-chandlers) contracted with D. N., the owner of said vessel, to furnish for her use, and in order to render her able to be employed in the navigation of the lakes, and especially the waters of the state of Wisconsin, certain materials, consisting of canvass and other articles (of which a schedule is annexed to the complaint), and the labor necessary to attach them to the vessel; that said schooner is now used in navigating the waters of the state of Wisconsin, and has been navigating them since the date aforesaid; and that there is now due the plaintiffs, for furnishing said materials and labor, $3733.31, with interest from December 23, 1868. Default of payment is then averred, and a warrant prayed for as provided by the statute. After service and return of the warrant, the owner of the vessel was ordered to plead to the complaint within ten days; and, it being made to appear that one *Herrick* and one *Smith*, of the city of New York, held a mortgage lien upon the vessel, leave was given them to appear and make defense. Accordingly, *Herrick* and *Smith* filed an answer: (1.) Admitting that plaintiffs furnished the supplies, etc., at the times and to the amount alleged in the complaint; but averring that on the 13th of May, 1868, said Daniel Newhall executed to said defendants a bond for the penal sum of $20,000, to secure the payment of moneys theretofore advanced, or thereafter to be advanced, to said Newhall by the said defendants; that at the same time Newhall, being then sole owner of said schooner, executed to said defendants a mortgage upon said vessel, with all her rigging and furniture, to secure payment of said bond; that said mortgage was on the next day duly recorded in the office of the collector of customs at the port and city of

Milwaukee, at which port said schooner was enrolled, and was, on the 10th of August, 1868, duly recorded in the office of the register of deeds of the county of Milwaukee, in which county said Newhall then resided and now resides; that a copy of said mortgage was also, on the 14th of May, 1868, duly filed in the office of the clerk of the city of Milwaukee, in which city said Newhall then resided and now resides; that Newhall made default in paying according to the conditions of said bond and mortgage, and there was actually due said defendants, *Herrick* and *Smith,* on the 10th of September, 1868, and ever since has been and now is due them on said bond and mortgage the full sum of $20,000. Said defendants claim that the lien of their mortgage is superior to the claim and lien of the plaintiffs, if they have any, upon said vessel, and that the amount due them should be first paid out of the proceeds of the sale of said vessel.

The plaintiffs recovered a judgment against the vessel for $4,003.72; and the court ordered a sale of the vessel, and that the sheriff bring the proceeds into court to be distributed between the plaintiffs and the defendants *Herrick* and *Smith,* according to their just priorities, to be thereafter determined by the court. The vessel was accordingly sold, and $4,370.50 paid into court as the net proceeds of the sale. *Herrick* and *Smith* made proof that the full sum of $20,000 was due them upon their bond and mortgage above described, and moved for an order that said moneys be paid to them; but the court made an order for the payment to the plaintiffs, out of said moneys, of the full amount of their judgment, with subsequent interest and costs. From this order *Herrick* and *Smith* appealed.

After the appeal was perfected, and after the papers had been filed in this court, the plaintiff *Norris* deceased. The respondent's attorneys noticed the cause for argument under the title of "*John Thor-*

*sen*, surviving plaintiff," etc. The appellants afterwards moved that the cause be stricken from the calendar, upon the ground that no order of revival had been made or entered in this court; but the motion was denied.

*Wm. Pitt Lynde* and *Jas. G. Jenkins*, for appellants, contended that the case comes within the admiralty and maritime jurisdiction of the federal courts. Rule 12 of Rules in Admiralty of U. S. Supreme Court; * *The Steamer St. Lawrence*, 1 Black, 522; *The General Smith*, 4 Wheat. 438; *Willard v. Dorr*, 3 Mason, 91; *N. J. St. Nav. Co. v. Merchants' Bank*, 6 How. (U. S.) 344. Congress has also provided that "no bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance, be recorded in the office of the collector of customs where such vessel is registered or enrolled: *Provided, that the lien by bottomry on any vessel, created during her voyage by a loan of money or materials necessary to repair or enable such vessel to prosecute a voyage, shall not lose its priority or be in any way affected by the provisions of this act.*" By the rule, *expressio unius, etc.*, this act declares that no lien except bottomry shall have priority or be valid as against any one but the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof. Yet it is here sought to enforce, against an enrolled and licensed vessel of the United States, a claim which does not amount to a maritime lien, but is entirely a creature of a state statute, and give that

* The rule cited is as follows: "In all suits by material men for supplies or repairs, or other necessaries, for a foreign ship or for a ship in a foreign port, the libellant may proceed against the ship and freight, *in rem*, or against the master or owner alone, *in personam*. And the like proceeding *in personam*, but not *in rem*, shall apply to cases of domestic ships for supplies, repairs, or other necessaries."

claim priority over a mortgage executed and recorded in accordance with the laws of congress, and divest the mortgagees of their entire rights of property, without any pretense that they are not *bona fide* purchasers, without notice; and this is done by a proceeding against the vessel—a proceeding unknown to the courts of common law, and peculiar to courts of admiralty and exchequer! Congress having legislated upon this subject of mortgages (under its right to regulate commerce), any state legislation or judicial decision which tends to interfere with that national legislation, or to exert itself upon the subject matter of the national legislation in any such way as to thwart or impair it, is absolutely void. *White's Bank v. Smith,* 7 Wallace, 646; *Aldrich v. Ætna Co.,* 8 id. 491. 2. A proceeding against a vessel by name, such as ch. 150, R. S., purports to authorize, is a proceeding in the nature and with all the incidents of a suit in admiralty; and state laws conferring jurisdiction in such cases upon state courts are in conflict with the constitution and laws of the United States, and void. *In re Steamboat Josephine,* 39 N. Y. 19; *The Hine v. Trevor,* 4 Wall. 569; *The Moses Taylor,* id. 411; *Ferran v. Hosford,* 54 Barb. 200; *Jackson v. Prop. Kinnie,* 8 Am. Law Reg. N. S. 470; *Steamboat Buell v. Long,* 18 Ohio St. 521; *Griswold v. Steamboat Otter,* 12 Minn. 465; *Ballard v. Wiltshire,* 28 Ind. 341; *Stewart v. Harry,* 3 Bush (Ky.), 438. 3. If the boat and vessel act is valid so far as it gives material men a lien against vessels employed entirely in the domestic trade and commerce of this state, still the plaintiff does not bring himself within its provisions as to such vessels (Am. Law Reg. N. S. vol. 7, 513): (1.) Because it is not alleged that this schooner was such a vessel; and (2.) because only a small part of the cause of action accrued within three months before she was summoned. 4. The act confers no *lien,* and a claim thereunder attaches only from the time of seizure,

We are aware that this court has in effect held, in *Hay v. Steamboat Winnebago*, 10 Wis. 428, that the act confers some sort of a lien; but it is submitted that such decision is in conflict with the general current of authority, and cannot be sustained, either upon principle or upon the language of the act. *Moses v. Steamboat Missouri*, 1 Man. 507; *Jones v. Steamboat Commerce*, 14 Ohio, 408; *Putney v. Sloop Celestine*, 4 Am. Law Journal, 165; *The Velocity*, 3 Law Rep. 61; *The Globe*, id. 488; *Wick v. Schr. Samuel Strong*, 6 McLean, 587. That it was not the legislative intent to confer such a lien may also be inferred from the fact that the subsequent act of 1859, which expressly conferred a specific lien, was repealed by the act of 1864, and the provisions of the Revised Statutes revived.   5. Under the decision in *McRoberts v. Steamboat Henry Clay*, 17 Wis. 101, no lien accrued for sails, etc., supplied to the vessel at the city of Detroit, but the statute in such a case becomes a " mere remedy upon a transitory cause of action."

*Emmons & Van Dyke*, for respondent, to the point that, under the statute, the plaintiff's demand constituted a lien upon the vessel as of the date when it was contracted, and, when enforced in the present form, would have preference over the lien of the appellants' mortgage, relied upon *Hay v. Steamboat Winnebago*, 10 Wis. 428, and cited, as recognising the same principle, *Emerson v. Shawano City*, 10 Wis. 433; *Steamboat Sultana v. Chapman*, 5 id. 454; *McRoberts v. Henry Clay*, 17 id. 101; and in Ohio, under a similar statute, *Provost v. Wilcox*, 17 Ohio, 359; *Monarch v. Potter*, 7 Ohio St. 457; *The Globe*, 2 Blatch. 427.   2. The supreme court of the United States has determined that state legislation on the subject of the registry of chattel mortgages, so far as registered and enrolled vessels are concerned, has been superseded by that of congress in the acts of 1850 and 1865 (*White's Bank v. Smith*, 7 Wall. 646; *Aldrich v. Ætna Co.*, 8 id. 491), but

in neither of these cases is it held that the mere act of registration would operate to give any additional effect to the legal character or quality of the mortgage. The registry is simply tantamount to actual notice of the fact to any persons who are to be affected by the mortgage.   3.  The state courts have jurisdiction of the proceeding against the vessel which the statute provides.   On a review of all the decisions of the supreme court of the United States having any bearing upon this question, the only proposition which seems to be recognized by all of them without modification or contradiction is, that congress has the power, in delegating constitutional jurisdiction, to limit or make reservations in its exercise.   Sec. 9 of the act of 1789 saves to suitors in all cases "the right of a common law remedy, where the common law is competent to give it."   In *Jackson v. Steamboat Magnolia*, 20 How. 300, Mr. Justice GRIER said : " The constitution, in defining the powers of the courts of the United States, extends them to all cases of admiralty and maritime jurisdiction.   It defines how much of the judicial power shall be exercised by the supreme court only; and it was left to congress to ordain and establish other courts, and to fix the boundary and extent of their respective jurisdictions.   Congress might give any of these courts the whole or so much of the admiralty jurisdiction as it saw fit."   In *Maguire v. Card*, 21 How. 248, Mr. Justice NELSON, speaking of the jurisdiction to enforce *in rem* liens for materials and supplies to domestic vessels, says: "We have determined to leave all these liens depending upon state laws, and not arising out of the maritime contract, to be enforced by the state courts."   There is nothing in the last reported decision  of  that court, *The Eagle*, 8 Wall. 15, contrary to this.   The act of 1845 (7 U. S. Stat. at Large, 726) contains, besides the saving clause of the act of 1789, above quoted, relating to *common law* remedies, the following: " And any con-

current remedy which may be given by the state laws, where such steamer or other vessel is employed in such business of commerce and navigation." 4. There is no admiralty jurisdiction *in rem* in a case like this. (1.) A contract for materials furnished for the original construction and outfit of a vessel, is not *maritime*, within the rules of admiralty law. *People's Ferry Co. v. Beers*, 20 How. 400; *Roach v. Chapman*, 22 id. 129. (2.) In case of articles furnished to a domestic ship, upon contract with her owner at the home port, the maritime law implies no lien, and there is no remedy *in rem* in admiralty. Per NELSON, J., in *Maguire v. Card*, 21 How. 251; *The Steamer St. Lawrence*, 1 Black, 524; *Williamson v. Hogan*, 41 Ill. 504, 518.

PAINE, J.    There are two good answers to the objection that the state court had no jurisdiction. The first is, that the contract for the original equipment of the vessel was not a maritime contract, within the supposed exclusive admiralty jurisdiction. *People's Ferry Co. v. Beers*, 20 How. 393; *Roach et al. v. Chapman et al.*, 22 id. 129. In the former case the contract was for building the hull of a vessel. And the court, in holding it not to be a maritime contract, within the admiralty jurisdiction, naturally enough mentions the fact that it was a contract made upon land, and to be performed on land. But it is obvious enough, from the whole opinion, that that fact was not considered as the criterion by which the question was to be determined, and that, on the contrary, it depended upon the fact whether the contract related directly to actual commerce and navigation, "to a voyage to be performed," or merely to the original construction and equipment of the ship, so as to prepare it to enter upon the business of navigation. And this being the test, it cannot be material to the result whether the contract for the construction or equipment is to be performed before the hull is launched

or afterwards. It has precisely the same relation to actual commerce, navigation and "voyages to be performed," in the one case as in the other. In the other case, the contract sought to be enforced in admiralty as maritime, was for furnishing the boilers and machinery to a steamboat, which, although the fact is not mentioned, were undoubtedly furnished and put in after the hull of the vessel was launched. And yet it was held that the federal court had no jurisdiction. The court said : " A contract for building a ship, or supplying engines, timber *or other materials* for her construction, is clearly not a maritime contract." There can, of course, be no distinction in this respect between a contract to supply machinery for the original construction of a steamboat, and one to supply sails, cordage, etc., like the one here, for a sail vessel.

Another answer is, that even though the contract were within the admiralty jurisdiction, yet, in cases arising upon the lakes, that jurisdiction is not exclusive, but concurrent with that of the state courts over remedies given by state laws. We are aware that by the decision of the United States supreme court in *The Eagle* (8 Wall. 15), which seems to be the latest exposition of the law upon this subject, the act of congress of 1845, which was passed for the purpose of extending the admiralty jurisdiction over the lakes, is held to have been to a great extent inoperative, since the decision of that court in the case of the *Genessee Chief* (12 How. 443), which obliterated the distinction between tide waters and other navigable waters, and held that the admiralty jurisdiction extended equally over both by virtue of the constitution and the original act of congress of 1789. The fair result of the opinion seems to be, that inasmuch as the act of 1845 was passed in consequence of a general misapprehension as to its necessity, the court would not give effect to it as a restriction upon

the jurisdiction which existed without it.. But its remarks upon this subject relate to the effect of the act as a direct restriction upon the jurisdiction of the federal courts, growing out of the clause limiting the jurisdiction to vessels of twenty tons burden, or upwards, and to cases of contract and tort. But notwithstanding this, the court does not hold the act wholly inoperative. They expressly' hold it effectual so far as to secure to the parties the right of trial by jury. There seems nothing in the opinion from which it can justly be inferred that any different view should be taken of its effect in securing to the parties also any concurrent remedy under the state laws. The legislative intent was as clear in respect to the one as to the other; it was as competent for the legislature to make the one provision as the other; and the provision saving this concurrent remedy does not seem to be within either the letter or the spirit of the remarks of the court in respect to the effect of the act as a restriction upon the jurisdiction of the federal courts. The saving of a concurrent remedy under the state law cannot be regarded as any restriction upon that jurisdiction. And it is difficult to see, so long as the act is held operative at all, upon what ground the legislative intent, thus clearly expressed, could be disregarded; for it would not be contended that it was not competent for congress so to provide.

And it is a significant fact, supporting this conclusion, that while the court holds that clause reserving the concurrent remedy at common law to have had no effect, because it was the same in substance as the provision of the act of 1789, it yet says nothing whatever as to the clause concerning the concurrent remedy under the state laws, though found in the same sentence. This seems to indicate a studious intention on the part of the court not to express itself upon that very important question, which was not involved in

the case before it, and as to which its remarks could not have been regarded as authority. And we can see nothing in the case, fairly considered, inconsistent with the conclusion that the act of 1845 was effectual to preserve this concurrent remedy under state laws.

The jurisdiction existing, we are not disposed to reconsider the decision of this court in *Hay v. The Steamboat Winnebago*, 10 Wis. 428, as to the effect of our statute in creating substantially a lien, which may be enforced notwithstanding subsequent changes of ownership. But it is necessary to decide another question, suggested but not determined in the case of *McRoberts v. The Steamboat Henry Clay*, 17 Wis. 101, and that is: Inasmuch as the vessel was out of this state when the equipment was furnished, so that our laws could not reach it, at what time did the lien or liability secured by our law attach to it? Was it when the vessel arrived in this state, or not until actually seized on a proceeding against it? It was there suggested that the legislature undoubtedly intended to go as far as it could in giving effect to the remedy it provided. And that would lead to the conclusion that the right secured by our law should be held to attach as soon as the vessel came within our jurisdiction, in all cases where there had been no prior change of ownership. This is a very strong case for the application of that rule; for, though the vessel was actually built out of this state, yet Milwaukee was her home port, and both the owner and the parties furnishing these supplies resided there, and were citizens of this state. The case is therefore peculiarly one which ought to be subject to our laws. We hold, therefore, that as soon as the vessel reached this state it became subject to the liability provided by our statute, and that whoever acquired a subsequent interest in it, acquired it subject to such liability. And it follows that the plaintiffs had a prior right to enough of the proceeds of the sale to satisfy their claim over the subsequent mortgagees. There is

nothing in the act of congress concerning the necessity of registering bills of sale, mortgages, hypothecations or conveyances of vessels, which can defeat liens under the state laws.    That act relates to written conveyances.    And the fact that it makes an exception in favor of "liens by bottomry," affords no implication of an intention to destroy all other liens not arising out of a written conveyance or contract capable of record. A lien by bottomry was created by a bottomry bond, originated in circumstances of necessity, and had this peculiar quality, that the last bottomry lien had priority instead of the first.    It was undoubtedly the peculiar nature of this lien, and the fact that it was created by a written instrument capable of being recorded, and might therefore be held to be within the general language of the act, that induced the exception.    But it affords no just implication of an intention to destroy all claims for liens under state statutes, for work, materials and supplies to vessels, in which there is no attempt at any written conveyance of the vessel, and which could not, therefore, be held to fall within the general language of the act, so as to need any exception in their favor.

The order appealed from must be affirmed.

*By the Court.*—Order affirmed.