THE GLOBE IRON WORKS COMPANY v. THE STEAMER "JOHN B. KETCHAM, 2ND," AND THE HURON TRANSPORTATION COMPANY, INTERVENER.

*Water-craft—Lien—Maritime contract—Jurisdiction.*

1. Contracts for the construction of vessels, and for the furnishing of materials therefor, before they are launched, are non-maritime, and liens and proceedings for their enforcement are under state control, and may be enforced in the state courts.

2. How. Stat. chap. 285, being Act No. 59, Laws of 1864, as amended, entitled "An act to provide for the collection

of demands against water-craft," cannot be held, under the authorities, to conflict with the laws of the United States in providing a lien and methods for its enforcement for the building of vessels and the furnishing of materials therefor before the vessel is launched into the water-ways of commerce.

Error to Wayne.    (Frazer, J.)    Argued April 11 and 12, 1894.    Decided June 2, 1894.

Proceedings to enforce a lien under the water-craft statute.    The intervening defendant brings error.    Judgment affirmed.    The facts are stated in the opinion.

*J. E. Tarsney* and *W. W. Wicker,* for appellant.

*Hatch & Cooley,* for complainant.

GRANT, J.    This is a proceeding to enforce a lien under the water-craft law of this State, being chapter 285, How. Stat.    The law now in existence was enacted in 1864, and was entitled "An act to provide for the collection of demands against water-craft."    The claim is for one boiler and attachments, one smokestack and umbrella with attachments, furnished and used in the building, fitting, furnishing, and equipping of the steamer "John B. Ketcham, 2nd."    The steamer was built, and the property which is the subject of this claim was furnished, in the state of Ohio.    The water-craft law of that state is similar to that of Michigan.    Section 44 of the act (How. Stat. § 8278) reads as follows:

"In cases where, by the general maritime law or laws of any other of the United States, now or hereafter to be passed, liens similar to those provided for in this act shall have been created against water-craft, the same may be enforced under the proceedings established by this act in like manner as if they accrued in this State; and chattel mortgages upon such water-craft, or other interest therein, held in such other states under the laws thereof, may be enforced hereunder against surplus proceeds, in like manner as if held in this State under its laws."

The amended complaint is as follows:

*"To the Circuit Court for the County of Wayne:*

"The amended complaint of the Globe Iron Works Company against the steamer 'John B. Ketcham, 2nd,' her engines, boats, tackle, apparel, and furniture, and against all persons lawfully intervening for their interest therein, in a cause of contract, alleges as follows:

*"First.* That the said complainant is a corporation duly organized and existing under the laws of the state of Ohio.

"*Second.* That said steamer is a water-craft of above five tons burthen, used, and intended to be used, in navigating the waters of this State, and said steamer also navigates the waters within and bordering upon the state of Ohio, and also the Great Lakes and their connecting waters, and, amongst others, Lakes Erie, St. Clair, and Huron, and the Detroit and St. Clair rivers; that she was built by her owners, Bills & Koch, hereinafter mentioned, with the intent and for the purpose of being so used in navigating said lakes and waters, and that they so intended to use said vessel during all the time she was being built.

*"Third.* That on or about the 14th day of May, 1892, at the special instance and request of Oscar P. Bills and Edward E. Koch, who were then the owners of said steamer, and were co-partners doing business under the firm name of Bills & Koch, said complainant furnished to said steamer the materials and machinery set forth in the statement hereto annexed, marked 'Schedule A,' and made a part hereof, to be used, and which were actually used, in and about the building, fitting, furnishing, and equipping said steamer, said steamer then being in the process of construction, and such materials and machinery being intended to be used, and actually were used, in and about the original building, constructing, fitting, furnishing, and equipping said steamer; that for said materials said copartners agreed, to and with said complainant, to pay said complainant the amount of money, and the interest thereon, stated in the said schedule, to wit, the sum of $4,054.72, $3,936.33 thereof on the 25th day of November, 1892, and $118.39 thereof on the 25th day of August, 1892.

"*Fourth.* That said materials and machinery are reasonably worth the sums of money charged for them in said schedule.

"*Fifth.* That, at the time of the commencement of this action, there was, and now is, due said complainant for the said materials the sum of $4,054.72, with interest on $3,936.33 thereof from the 25th day of November, 1892, at the rate of six per cent. per annum, and on $118.39 thereof from the 25th day of August, 1892, at the same rate, and that no part of the same has ever been paid.

"*Sixth.* That the said contract for furnishing the materials and

machinery aforesaid was made and performed by the said complainant, and the said materials and machinery were accepted and used, and intended to be accepted and used, as aforesaid, by the said Bills & Koch, in the said state of Ohio; that at the time of the making of said contract between the said complainant and the said Bills & Koch, and at the time the said complainant so furnished the said materials and machinery, the said vessel, as said complainant is informed and believes, was then upon the land in said state of Ohio, and not in the water, and had never been in the water, and had never been launched, and that at the time of the making of said contract it was the intent and purpose of both the said complainant and the said Bills & Koch that the said machinery should be placed in the said vessel before she was removed from the land or launched or placed in the water, and that the said materials and machinery were so placed in the said vessel while she was upon the land, and before she was launched or placed in the water; that at the time of the making of said contract, and at the time the complainant performed the same by the delivery of said materials and machinery, and at the time the same was so placed in said vessel by said Bills & Koch, the said vessel, as the complainant is informed and believes, had not been "licensed or enrolled under the acts of Congress.

"*Seventh.* Complainant further alleges that, on and for a long time prior to the said 14th day of May, 1892, and during all the time since, there have been, and now are, created, by the laws of the state of Ohio, liens against water-craft similar to those provided for by chapter 285 of Howell's ' Annotated Statutes of the State of Michigan.

"*Eighth.* That the laws of the state of Ohio, on and for a long time prior to said 14th day of May, 1892, and during all the time since, have provided, and do now provide, that any steamboat or other water-craft navigating the waters within or bordering upon said state shall be liable, and such liability shall be a lien thereon, for all debts contracted on account thereof by the master, owner, steward, consignee, or other agent for materials, supplies, or labor in building, repairing, furnishing, or equipping of the same.

"*Ninth.* That the laws of said state further provide that the liens hereinbefore mentioned may be enforced in a proceeding in the nature of a proceeding *in rem* against the water-craft against which they accrue, by name.

"*Tenth.* That, by the laws of the state of Ohio aforesaid, a lien in favor of said complainant has been created, and now exists, against the said steamer, for the said sum of $4,054.72, with interest thereon as aforesaid, and by reason of the premises, and of the statute in such case made and provided, said complainant is entitled to, and has a lien upon, the said steamer ' John B. Ketcham,

2nd,' for the sum of money last mentioned, and interest thereon as aforesaid, which lien is enforceable under the statutes of this State in such case made and provided; that said complainant is informed and believes that, since its said lien has accrued, said steamer has been sold by said copartnership, but to whom said complainant does not know, but positively avers that the present owners of said steamer are not *bona fide* purchasers thereof without notice, but that, on the other hand, they had full notice and knowledge of the said lien of the complainant at the time they purchased said steamer.

"Wherefore said complainant prays that process in due form, according to the course and practice of this court, under the statute in such case made and provided, may issue, directed to the sheriff of said county, commanding him to seize and safely keep said steamer 'John B. Ketcham, 2nd,' her tackle, apparel, and furniture, to answer all such liens as shall be established against it according to law, and to make return of his proceedings under such warrant, pursuant to said statute; and also that, pursuant to said statute, a summons to the owner or master of said steamer be issued in due form, and that judgment may be rendered in favor of said complainant for its claim aforesaid, and that the same may be satisfied, and the complainant's said lien against said steamer may be enforced, according to the statute in such case made and provided, and that said complainant may have such other and further relief in the premises as the case may entitle it to."

The defendant owner demurred to the complaint upon the ground that it did not set forth a cause of action cognizable by the State court, but that, the vessel being engaged in commerce upon the Great Lakes, proceedings *in rem* to enforce the collection of a claim against her can be maintained only in the United States courts in admiralty. The demurrer was overruled, and the defendant appeals.

But one question is raised by the defendant, viz., whether the United States admiralty court has exclusive jurisdiction in the case. The solution of the question depends upon the character of the contract. If the contract under which this machinery was furnished is a maritime contract, then the United States courts have exclusive jurisdiction; if it is a non-maritime contract, then the State court has jurisdiction, and the remedy provided by the State water-

craft law is valid.  The learned counsel for the defendant have cited many authorities where the jurisdiction of the state courts was denied over proceedings *in rem* instituted in such courts upon maritime contracts and maritime torts. Among these are the following: *The Hine v. Trevor,* 4 Wall. 555; *The Moses Taylor,* 4 Id. 411; *The Belfast,* 7 Id. 624; *Brookman v. Hamill,* 43 N. Y. 554; *The Josephine,* 39 Id. 19; *The Petrel v. Dumont,* 28 Ohio St. 602; *Campbell v. Sherman,* 35 Wis. 103; *Vose v. Cockcroft,* 44 N. Y. 415; *The Gen. Buell v. Long,* 18 Ohio St. 521; *Weston v. Morse,* 40 Wis. 455; *Ferran v. Hosford,* 54 Barb. 200.

In the case of *The Moses Taylor,* suit was brought in a state court on a contract for the transportation of a passenger, which was held to be a maritime one, like the transportation of merchandise.

*The Hine v. Trevor* was a case of collision on the Mississippi river near St. Louis.  The libelants brought suit under the state law of Iowa, which subjugated the vessel to sale in satisfaction of the damages sustained.  Held a maritime tort.

In *The Belfast,* the libelants sued in the state court for the loss of 29 bales of cotton while in transportation. Held a maritime contract.

The libelants in *The Josephine* were proceeding to enforce a lien under the state law for supplies, etc., furnished to the vessel while engaged in commerce between the port of New York and a port in the state of New Jersey.

In *The Petrel v. Dumont*—a case greatly relied upon by the defendant's counsel—it was held that contracts for supplies furnished at the home port while the vessel was engaged in navigation were maritime contracts.

These will sufficiently illustrate the character of the cases.  In all, the jurisdiction of the state court was denied because the contracts involved were maritime.

It is equally well established by a long line of author-

ities, in both the federal and the state courts, that state courts have jurisdiction over cases founded upon non-maritime contracts or non-maritime torts. *Edwards v. Elliott*, 21 Wall. 532; *Johnson v. Elevator Co.*, 119 U. S. 388; *Foster v. The Richard Busteed*, 100 Mass. 409; *McDonald v. The Nimbus*, 137 Id. 360; *Sheppard v. Steele*, 43 N. Y. 52; *King v. Greenway*, 71 Id. 413; *Wilson v. Lawrence*, 18 Hun, 56, affirmed 82 N. Y. 409; *The Tuttle v. Buck*, 23 Ohio St. 565; *Sinton v. The R. R. Roberts*, 34 Ind. 448; *Hay v. The Winnebago*, 10 Wis. 428; *Thorsen v. The J. B. Martin*, 26 Id. 488. In each of the above cases the proceeding was *in rem*.

The jurisdiction of the admiralty courts over cases founded upon non-maritime contracts has been denied in the following cases: *Roach v. Chapman*, 22 How. 129; *Ferry Co. v. Beers*, 20 Id. 393; *Cunningham v. Hall*, 1 Cliff. 43; *Young v. The Orpheus*, 2 Id. 29; *The Pacific*, 9 Fed. Rep. 120; *The Count De Lesseps*, 17 Id. 460.

The fundamental error on the part of the defendant lies in the apparent assumption that the machinery in the present case was furnished under a maritime contract. Whatever may once have been the rule, it is now established beyond controversy that contracts for the construction of vessels, and for the furnishing of materials therefor, before they are launched, are non-maritime, and that liens and proceedings to enforce such liens are under state control, and may be enforced in state courts. The latest enunciation of the doctrine by the Supreme Court of the United States is found in the case of *The J. E. Rumbell*, 148 U. S. 11, where it is said:

"It is now settled that a contract for building a ship, being a contract made on land, and to be performed on land, is not a maritime contract, and that a lien to secure it, given by local statute, is not a maritime lien, and cannot, therefore, be enforced in admiralty."

Many authorities are there cited and commented upon.

In the case of *The Petrel v. Dumont,* it was said that "contracts for boat or ship building are not maritime contracts." See, also, *Lake v. The Manhattan,* 46 Fed. Rep. 797; *Edwards v. Elliott,* 21 Wall. 532; *Roach v. Chapman,* 22 How. 129; *Cunningham v. Hall,* 1 Cliff. 43; *The Pacific,* 9 Fed. Rep. 120; *The Count De Lesseps,* 17 Id. 460.

After the vessel is launched, contracts for equipment or repairs or material are maritime. Before the vessel is launched, they are contracts upon land, and are non-maritime. The distinction is so clearly pointed out in the numerous authorities above cited, and the rule so firmly established, that we deem further discussion unimportant. The reason for the distinction appears to be that in the former case the vessel is engaged in commerce, while in the latter case she is not, or, as stated in *Lake v. The Manhattan,* "a ship *in esse* as a maritime subject gives a maritime character to all transactions directly connected with it." That is an interesting case, both in drawing the distinction, and giving the reasons therefor which are supposed to exist.

The water-craft law of Michigan, substantially in its present condition, so far as this question is concerned, has been upon the statute books since 1839. Act No. 43, Laws of 1839. Many cases arose under to it prior to 1863, in none of which does the validity of the act appear to have been questioned. In *Parsons v. Russell,* 11 Mich. 113, one feature of the act was held unconstitutional because it violated the provision of the Constitution that "no person shall be deprived of life, liberty, or property without due process of law," in that it did not provide for a determination of the validity or amount of the claim before a judicial tribunal, but authorized the seizure and sale of a vessel upon the mere assertion of the debt or demand. Upon this point, however, the Court was divided.

In 1864 the Legislature, in view of that decision, passed a new act, incorporating the main provisions of the old. It differed from that mainly in providing judicial proceedings to establish and enforce the lien. Several cases have since been brought under the law, in none of which has its validity been attacked. It certainly cannot be held, under the authorities, to conflict with the laws of the United States in providing a lien and methods for enforcing such lien for the building of vessels and the furnishing of materials therefor before the vessel is launched into the water-ways of commerce.

Judgment affirmed.

The other Justices concurred.